Ben West (SBN 251018)
Joseph Radochonski (SBN 321119)
**CALDARELLI HEJMANOWSKI PAGE & LEER, LLP**
3398 Carmel Mountain Road, Suite 250
San Diego, CA 92121
Tel: (858) 720-8080
Email: dbw@chpllaw.com; jmr@chpllaw.com

Jeffrey S. Ettenger (*Pro Hac Vice* Application Pending)
**SCHWARTZ ETTENGER, PLLC**
445 Broad Hollow Road, Suite 205
Melville, NY 11747
Tel: (631) 777-2401
Email: jse@selawny.com

Attorneys for Plaintiff Big Think Capital, Inc.

# UNITED STATES DISTRICT COURT

## SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| BIG THINK CAPITAL, INC., a New York corporation,<br><br>Plaintiff,<br><br>v.<br><br>CENTREX SOFTWARE, INC., a California corporation, and SET FORTH, INC., a Delaware corporation,<br><br>Defendant. | Case No.: **'24CV2194 BEN VET**<br><br>**COMPLAINT** |

COMPLAINT

Plaintiff, Big Think Capital, Inc. ("Plaintiff" or "Big Think"), a New York corporation, through undersigned counsel, sues Defendants CENTREX SOFTWARE, INC. ("Centrex"), and SET FORTH, INC. ("Set Forth"), hereby state and allege as follows:

## INTRODUCTION

1. This is an action by Plaintiff against Defendants for damages and other remedies for, including but not limited to, breach of contract, fraud, negligence, and conversion of confidential financial information, as a direct result of Defendants' knowingly and intentionally, or otherwise, participating in and allowing the theft and leaks of Plaintiff Big Think's (and its Merchants'/Customers') confidential and proprietary financial and other data, or permitting the significant and overwhelming data thefts and leaks to occur within their own operations, all to the extreme financial and reputational detriment of Plaintiff Big Think and its Merchants/Customers. The claims also relate to Big Think's competitors' receipt of said data and use of same for profit.

2. This is an action for damages that exceeds the sum of ONE MILLION DOLLARS ($1,000,000.00), exclusive of attorneys' fees and costs, and other relief.

## PARTIES

3. At all times material hereto, Big Think was and is a New York corporation, with its principal place of business at 201 Old Country Road, Melville, New York 11747.

4. At all times material hereto, Defendant Centrex was and is a California corporation with its principal place of business located in Costa Mesa, California.

5. Defendant Set Forth is most recently, upon information and belief, an Delaware corporation, with a place of business located in Schaumberg, Illinois.

## JURISDICTION

6. This Court has subject matter over this case pursuant to 28 U.S.C. § 1332 because there is complete diversity of citizenship, and the amount in controversy

exceeds the sum of $75,000, exclusive of interest and costs.

7. The Court has personal jurisdiction over Defendants Centrex and Set Forth because Defendant Centrex's principal place of business is located in California and Defendant Set Forth provides services for Defendant Centrex that is directly related to this dispute.

8. Venue is proper in this Court pursuant to the Choice of Law and Jurisdiction clause contained in the Agreement stating that any dispute arising out of or related to the Agreement with Defendant Centrex shall be heard in San Diego, California.

## GENERAL ALLEGATIONS

9. Plaintiff Big Think and Defendant Centrex entered into the Centrex Software Subscription & License Agreement (the "Agreement") on or about November 1, 2021. A copy of the Agreement is attached to the Complaint and marked Exhibit "1".

10. Plaintiff Big Think facilitates lending for business owners throughout the country. Through an aggressive internet and marketing campaign, Big Think connects business owners with top lenders across the country so that the small business owners have ready access to the business financing (and merchant cash advances) they require to financially manage and operate their daily, on-going businesses.

11. Defendant Centrex describes itself as a "white label fintech solutions company," which provides financial technology software solutions, interfacing, and platforms to companies such as Plaintiff. Defendant Centrex operates dedicated finance customer relationship management platforms, so that, e.g., Merchants and Customers can apply online through Big Think, using Defendant Centrex's software platform, for their business loans.

12. Defendant Set Forth develops and provides custom software development services and firmware engineering services, and developed, upon information and belief, the consumer product software used by Defendant Centrex as it interfaced and

worked with Plaintiff in accordance with the terms of the Agreement.

13.  Set Forth has specific knowledge of the contracts generated by Centrex, and is a direct beneficiary of these contracts, including the contract with Plaintiff.

14.  When Merchants and Customers of Plaintiff apply online through Big Think for their business loans, they provide the prospective lenders with mostly sensitive, highly confidential and proprietary personal and business information, including but not limited to social security numbers, tax identification numbers and other tax information, driver's license numbers, business records, bank statements, voided checks revealing bank account numbers and balances, credit card account numbers and information, employee and employment information, business strategic planning data, and loan terms and conditions information. All of this confidential financial and business information is submitted to and through the online platforms of Defendant Centrex and Defendant Set Forth, pursuant to the Agreement entered into between Plaintiff and Defendant Centrex.

15.  More specifically, pursuant to the Agreement, Defendant Centrex agreed to provide to Big Think, as a subscriber of Defendant's software, certain set up, configuration and training for use of the software, development of brokers' portals, customer relationship management tools and portals, including ways to engage and keep engaged leads and customers through triggering emails and communications, dynamic data management tools and portals, and more broadly notification and contact tools. Defendant Centrex agreed that this supplied confidential financial and business data would be and remain secure at all times and in all instances.

16.  The confidentiality of the customer and prospective customer data is essential to Plaintiff's business and reputation. If customers or prospective customers do not believe that their data is secure, they will not do business with Big Think.

17.  During sales presentations and discussions with Big Think prior to the execution of the Agreement, Centrex's personnel made representations to Big Think

about the security of Centrex's system. For instance, a Centrex Software Specialist made statements to Big Think's personnel during a November 5, 2021 sales meeting concerning the data security aspects of the Centrex system. Those statements included representations that the Centrex system was secure, that the data of Big Think's Merchants and Customers would be kept private and not shared with third parties, and that Centrex would provide Big Think with a "Centrex Safe" digital seal that Big Think could provide to its clients as a means for assuring them that their data would be secure.

18. On the same day, a Centrex Software Specialist provided Big Think's IT Director with a Centrex document entitled "Implementation Proposal" that described four different packages for implementing the Centrex platform: a-la-carte, professional, executive, and diamond.

19. Consistent with the representations made during the meeting, the Implementation Proposal stated that the professional, executive, and diamond packages came with this "Centrex Safe" seal. Centrex's described each package: "this package comes with the 'Centrex Safe' digital seal and document that you can provide your clients, employees, investors, syndicators, and staff so they know their data and information is safe." Big Think relied on these representations in selecting the Centrex platform and in choosing the diamond implementation package.

20. Centrex's website from that time period contained additional representations about data security. For instance, Centrex represented to potential customers like Big Think that:

> Cyber attacks, ransomware, data breaches, forced downtime, identity theft, disruptive hacking and more: No single issue in the delivery and use of technology services has generated more worldwide anxiety than has security. The stakes are huge. A crime of calamitous magnitude can put you out of business. You want enterprise services in the cloud that can empower and transform your business, affording you the opportunity to greatly enhance revenue growth. But, more than ever, such service must be delivered with overarching security that closes the door to the dark side throughout every level of the service platform.
>
> Centrex Software has made the commitment to invest appreciable resources and systemic intelligence to assure smooth and safe functionality. Our commitment is ongoing, hardened by security

> initiatives at the Physical, Hardware, Software and Logical levels — enhanced with redundancy that tightens continuity concerns.
>
> You can put your full trust in Centrex Software. You can have the peace of mind that enables you to concentrate on your business, not on issues that compromise your future.

21. Moreover, Centrex's clearly stated that its development team had no access to the highly sensitive data of Big Think's merchants and customers: "With the exception of senior system architects, our development staff works isolated from — and has no access to — the production environment and its data."

22. The obligation of both Defendant Centrex and Defendant Set Forth was for Centrex and Set Forth to keep Big Think's customer data secure and confidential and assure Plaintiff that its Merchants' and Customers' confidential and highly sensitive financial data would not be compromised, leaked, sold, stolen, hypothecated or misused or misappropriated in any manner or under any scenario.

23. Centrex and Set Forth have breached this obligation to Big Think and its customers and Centrex misrepresented that Big Think's data would be and remain secure at all times and in all instances. For an unspecified period, of likely at least 12 months, but more importantly most recently during the last several months, Plaintiff has learned through its Merchants and Customers, through its own investigations and inquiries, and from and through competing companies and competing brokers, that the Merchants' and Customers' most private financial information and business and personal data has been leaked, hypothecated, misused, misappropriated, or otherwise compromised by Defendant Centrex and Defendant Set Forth.

24. These significant, numerous data leaks have damaged Big Think, its Merchants, and its Customers. More specifically, the data leaks have caused Big Think customers to cease business relations, and prospective customers to elect not to conduct business with Big Think.

25. Since the beginning of 2024, if not sooner, Big Think has been advised by

Customers and Merchants that their confidential data may have been leaked to competing businesses. Specifically, customers have advised Plaintiff that immediately after their confidential data was provided to Big Think, that competitors would contact the customer and attempt to offer them competing loans.

26. It became clear that the customer data was being leaked to competitors. In fact, Big Think accused several competitors of illegally obtaining Big Think customer information, and Big Think has commenced litigation relating to same.

27. Big Think reasonably believed that bank or financial services employees were selling the confidential data to the competitors. Unfortunately, Big Think had no direct evidence to prove same.

28. On or about May 21, 2024, Defendant Centrex informed Plaintiff that Defendant Set Forth and Defendant Centrex at some prior time discovered a vulnerability in their systems, which had existed supposedly through a decommissioned portal that was still in production but not included in their security protocols. Supposedly a third party had accessed their systems and exploited this vulnerability.

29. Notably, upon information and belief, third parties had notified Centrex and Set Forth before May 21, 2024, that they believed that the confidential information had been leaked as a result of a data breach by Centrex and Set Forth. Despite a reasonable belief that their data was hacked prior to May 21, 2024, Set Forth and Centrex elected not to notify Big Think of these facts, causing significant damage.

30. To date, Defendant Centrex and Defendant Set Forth have not identified to Plaintiff the true, accurate source or extent of its internal leaks and breaches, but it is clear that the leaks, breaches, misuses, hypothecation and misappropriation of Plaintiff's, its Merchants' and Customers' confidential financial data occurred knowingly and intentionally, or otherwise, within and at the hands of Defendant Centrex, all in violation of the Agreement, and at the hands of Defendant Set Forth.

31. Though this data was leaked, Centrex continues to charge Big Think for

its services and has not provided any refund or credit for its bad acts.

32. Defendant Centrex and Defendant Set Forth have admitted to Plaintiff that the hack did occur, and the data was breached, but have refused to provide any additional information relative to the scope of the data breach and to what third parties/competitors the data was sold to.

33. Big Think believes that numerous competitors either received or purchased this data from the "hacker".

34. Though Centrex and Set Forth have since advised that the "hack" has been resolved, Big Think's Customer and Merchant confidential information continues to be "hacked' and provided to third parties to date.

35. Big Think has been damaged through interested non-parties accessing this data and using it to solicit Big Think's customers.

36. These damages are ongoing.

37. It is unknown if the confidential information was sent by a third party or an internal employee of Centrex and/or Set Forth.

38. Plaintiff has retained the undersigned counsel to represent it in this matter and to litigate these causes of action against all Defendants, and it is obligated to pay counsel its fees and costs as incurred herein.

## FIRST CAUSE OF ACTION - BREACH OF CONTRACT
### (Against Defendant Centrex)

39. Plaintiff Big Think repeats and realleges the preceding Paragraphs of the Complaint as though fully set forth herein.

40. Defendant Centrex breached the Agreement by failing to properly secure Plaintiff's data and knowingly and intentionally, or otherwise, permitting or allowing, the breach and leaks of Plaintiff's, its Merchants' and Customers' confidential and proprietary financial data and information. The breach and leaks of the confidential financial data resulted directly and immediately in unknown and unrelated brokers and competing companies contacting and harassing Plaintiff, its Merchants and Customers.

41. Plaintiff Big Think has lost business and revenue as a direct result of Defendant's breaches of the Agreement.

42. Plaintiff Big Think has lost and will continue to lose revenue as a result of Defendant's breach based on a loss of reputation and trust amongst its customers and prospective customers.

43. This breach continues to the date of this filing, as confidential information continues to be sold to third parties.

44. Defendant Centrex was obligated by the Agreement to keep safe all the confidential data, and to make certain that all appropriate safeguards, procedures and programs were in place and secure to prevent Defendant's leaking the confidential data to third parties or misusing and misappropriating it for its own benefit.

45. Plaintiff Big Think has performed, or has been excused from performance of, all conditions, covenants, and promises under the terms of the Agreement.

46. All conditions required by the Agreement for Defendant Centrex's performance occurred or were waived.

47. Defendant Centrex bills Big Think monthly for its service. As part of the parties Agreement, Centrex is obligated to keep Big Think customer data secure. Centrex has breached this obligation for an unspecified period, but continued and continues to charge Big Think for its services. Big Think is entitled to reimbursement for all charges relative to this service during the period of the data breach.

48. Plaintiff has incurred millions of dollars in damages as a direct result of Defendant Centrex's breaches and bad acts, the extent of which is unknown at this time.

## SECOND CAUSE OF ACTION - FRAUD
### (Against Defendant Centrex)

49. Plaintiff Big Think repeats and realleges the preceding Paragraphs of the Complaint as though fully set forth herein.

50. Defendant Centrex, through its Software Specialists its marketing

materials, and its website, represented to Big Think on or about November 5, 2021 that the supplied confidential financial and business data would be and remain secure at all times and in all instances and Defendant Centrex obligated itself and promised to Plaintiff Big Think that it would protect, keep safe and safeguard the confidential financial information of Plaintiff, its Merchants and Customers from leaks, misuse, misappropriation, hypothecation, theft and conversion.

51. For instance, Centrex represented that Big Think could display a "Centrex Safe" digital seal alerting Big Think's "clients, employees, investors, syndicators, and staff so they know their data and information is safe."

52. Big Think's website represented that:

> Centrex Software has made the commitment to invest appreciable resources and systemic intelligence to assure smooth and safe functionality. Our commitment is ongoing, hardened by security initiatives at the Physical, Hardware, Software and Logical levels — enhanced with redundancy that tightens continuity concerns. You can put your full trust in Centrex Software. You can have the peace of mind that enables you to concentrate on your business, not on issues that compromise your future.

53. Defendant Centrex affirmatively represented that, "With the exception of senior system architects, our development staff works isolated from —and has no access to — the production environment and its data." Big Think later learned that this representation was not true.

54. Defendant Centrex and its respective representatives knew when they obligated themselves and promised to Plaintiff Big Think that they would protect, keep safe and safeguard the confidential financial data that they would not do so or could not do so to the exclusion of leaks, misuse, misappropriation, hypothecation, theft and conversion, whether occurring "in-house" or otherwise.

55. Defendant Centrex knew that such representations and promises were false or it made the representations and promises recklessly and without regard for its true because it had a decommissioned portal that was still in production but not

included in their security protocols, which caused the confidential financial information of Plaintiff and its Merchants and Customers to be leaked, misused, misappropriated, hypothecated, stolen, and converted.

56. Defendant Centrex intended Plaintiff to rely on the representations and the promises because it knew that such representations and promises were essential in inducing Plaintiff to enter into the Agreement.

57. Plaintiff Big Think reasonably relied on Centrex's representations and promises and would not have entered into the Agreement without such representations and promises.

58. As a result of Defendant Centrex's fraudulent conduct, Plaintiff Big Think has lost business and revenue, has suffered significant harm to its business and reputation, as a leader in this industry, and has directly lost customers and business.

59. Plaintiff has incurred millions of dollars in damages as a direct result of Defendants' fraudulent conduct.

60. Plaintiff Big Think's reliance on Centrex's representations and promises was a substantial factor in causing Plaintiff harm because without such representations and promises, Plaintiff would never have entered into the Agreement.

61. The conduct of Defendant Centrex was fraudulent and malicious, justifying an award of punitive damages under California Civil Code section 3294. Centrex's conduct was malicious because its conduct was despicable and under information and belief, it was aware that its false representations and promises would cause financial harm to Plaintiff Big Think and it deliberately failed to avoid Plaintiff Big Think's harm in exchange for its own financial gain.

## THIRD CAUSE OF ACTION - NEGLIGENCE
### (Against All Defendants)

62. Plaintiff Big Think repeats and realleges the preceding Paragraphs of the Complaint as though fully set forth herein.

63. Defendants Centrex and Set Forth, owed Plaintiff a duty of care to safeguard, protect and care for the confidential financial data that they had on their systems as a result of the delivery of such information to them by Plaintiff, its Merchants, and its Customers.

64. Defendants acted negligently and well below the standard of care of this industry by improperly handling, securing, and administering the confidential financial data of Plaintiff, its Merchants, and its Customers.

65. Defendants negligently allowed for data breaches to occur, allowed or permitted data leaks to transpire, whether at the hands of Defendants' officers and employees or by unrelated third parties, and in a number of ways Defendants failed all standards of care by not securing and protecting the confidential financial data of Plaintiff, its Merchants, and its Customers.

66. Plaintiff Big Think has lost business and revenue as a direct result of Defendants' negligence.

67. Plaintiff Big Think has suffered significant harm to its superior business reputation, as a leader in this industry, as a direct result of Defendants' negligence.

68. Defendants had a duty to keep safe all of the confidential data, and to make certain that all appropriate safeguards, procedures and programs were in place and secure to prevent Defendants' leaking the confidential data to third parties or misusing and misappropriating it for their own benefit. Instead, Defendants Centrex and Set Forth acted with negligence

69. Plaintiff has incurred millions of dollars in damages as a direct result of Defendants' negligence in handling and protecting Plaintiff's confidential financial data.

### FOURTH CAUSE OF ACTION - CONVERSION
### (Against All Defendants)

70. Plaintiff repeats and realleges the preceding Paragraphs of the Complaint as though fully set forth herein.

71. Defendant Centrex and Defendant Set Forth obligated themselves and promised Plaintiff Big Think that they would protect, keep safe, and secure the confidential financial information of Plaintiff, its Merchants, and its Customers.

72. Instead, Defendants Centrex and Set Forth, in possession and control of the confidential financial information of Plaintiff, its Merchants, and its Customers, misused and misappropriated the confidential financial information and converted it to their own use, or the use and access of their officers and employees or other third parties, in direct violation of Plaintiff's rights and obligations to possess that confidential financial information for its legitimate business purposes.

73. The exact confidential financial information that Defendants misused, misappropriated, and converted to their own benefit, to the exclusion of the possessory interests of Plaintiff, is in fact confidential but describable and discernible to Defendants, but purposely is not disclosed in detail by Plaintiff Big Think in this public filing.

74. Plaintiff did not consent to Defendants Centrex and Set Forth's misuse and misappropriation of the confidential financial information and conversion of it for their own benefit.

75. Plaintiff Big Think has lost business and revenue as a direct result of Defendants' conversion of the confidential financial information.

76. Plaintiff Big Think has suffered significant harm to its business and reputation, as a leader in this industry, as a direct result of Defendants' conversion of the confidential financial information.

77. Plaintiff has incurred millions of dollars in damages as a direct result of Defendants' converting the confidential financial information for their own benefit and possessing it to the exclusion of Plaintiff Big Think.

### FIFTH CAUSE OF ACTION - BREACH OF IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING
### (Against Defendant Centrex)

78. Plaintiff repeats and realleges the preceding Paragraphs of the Complaint as though fully set forth herein.

79. Plaintiff and Defendant Centrex entered into a contract in which Defendant was required to secure Plaintiff's customers' data for a fee.

80. Defendant was obligated to take steps to protect this confidential information.

81. Defendant had an implied covenant to act in good faith to secure the data and to notify Plaintiff if this confidential information was at risk.

82. Defendants, with knowledge that the data was at risk, continued to accept new data and did not advise Plaintiff of this risk and continued harm.

83. Defendant breached the implied covenant of good faith and fair dealing inherent in the Agreement by continuing to accept new data from Plaintiff without informing Plaintiff that its data was at risk.

84. Plaintiff has incurred millions of dollars in damages as a direct result of Defendant's actions in violation of the covenant of good faith and fair dealing.

## SIXTH CAUSE OF ACTION - UNFAIR COMPETITION (CAL. BUS. & PROF. CODE § 17200)

**(Against Defendant Centrex)**

85. Plaintiff repeats and realleges the preceding Paragraphs of the Complaint as though fully set forth herein.

86. As alleged in this Complaint, Defendant Centrex has engaged in a variety of conduct directed toward Plaintiff that constitutes unlawful, unfair, and fraudulent business practices in violation of California Business & Professions Code section 17200, including without limitation: (a) breaches of contract; (b) fraud; and (c) conversion.

87. Defendant took the action alleged in this Complaint with the intent to injure Plaintiff, to gain an unfair competitive advantage, and to diminish competition.

88. Plaintiff has suffered injury in fact and has lost money as a result of

Defendant's unfair competition, including losing contractual relationships, and therefore has standing to pursue this claim

89. Accordingly, Plaintiff seeks an award of restitution under section 17203

**WHEREFORE**, Plaintiff demands judgment against the Defendants as follows:

    A. On the First Cause of Action, for the sum of at least One Million Dollars ($1,000,000) plus interest, costs and disbursements;

    B. On the Second Cause of Action, the sum of at least One Million Dollars ($1,000,000) plus interest, costs, disbursements, and punitive damages;

    C. On the Third Cause of Action, for the sum of at least One Million Dollars ($1,000,000) plus interest, costs and disbursements;

    D. On the Fourth Cause of Action, for the sum of at least One Million Dollars ($1,000,000) plus interest, costs and disbursements;

    E. On the Fifth Cause of Action, for the sum of at least One Million Dollars ($1,000,000) plus interest, costs and disbursements;

    F. On the Sixth Cause of Action, for an award of restitution of all amounts Defendant Centrex has obtained from Plaintiff;

For such other and further relief as this Court deems just, proper, and equitable, including the costs and disbursements of this action together with reasonable attorneys' fees.

Respectfully submitted

Dated: November 22, 2024    **CALDARELLI HEJMANOWSKI PAGE & LEER LLP**

By: /s/ Ben West
    Ben West
    Joseph M. Radochonski
    Jeffrey S. Ettenger (*Pro Hac Vice* Application Pending)

Attorneys for Plaintiff Big Think Capital, Inc.